**Kenneth SHUGERMAN, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

**Case No. CV–08–2011 CAS (CWx).**

United States District Court,
C.D. California,
Western Division.

Jan. 12, 2009.

Victor Jacobovitz, Victor Jacobovitz Law Offices, Los Angeles, CA, for Plaintiff.

Deborah A. Berthel, Gregory M. MacGregor, Jaclyn Dyan Grossman, Joshua N. Willis, MacGregor and Berthel, Woodland Hills, CA, for Defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CHRISTINA A. SNYDER, District Judge.

## I. INTRODUCTION

On January 8, 2008, plaintiff filed the instant action in Los Angeles County Su-

perior Court against defendants Allstate Insurance Company ("defendant") and Does 1 to 100, inclusive. On or about February 11, 2008, plaintiff filed a First Amended Complaint ("FAC"). The gravamen of plaintiff's complaint is that plaintiff's residence was seriously damaged when wind-driven rain entered his home, and that defendant insurer—from whom plaintiff had purchased a policy covering property damage—failed to conduct a prompt, full investigation of the facts and circumstances giving rise to plaintiff's claim, failed to pay for several covered items, and/or failed to pay the full value of the claim. FAC ¶¶ 1, 17, 22. Plaintiff's FAC asserts claims for (1) breach of written contract and (2) breach of the covenant of good faith and fair dealing. On March 26, 2008, defendant removed the instant action to this Court.

On December 1, 2008, defendant filed the instant motion for summary judgment. Plaintiff filed an opposition on January 5, 2009. Defendant filed a reply on January 5, 2009.[1] Defendant's motion for summary judgment is currently before the Court.

## II. FACTUAL BACKGROUND

Defendant issued a Deluxe Plus Homeowners insurance policy, Policy No. 037497293 ("the policy") to plaintiff, which was effective from June 25, 2005 through June 24, 2006. Def's Statement of Uncontroverted Fact ("SUF") ¶ 1; Pl's Statement of Genuine Issues ("SGI") ¶ 1. The policy states "Suit Against Us–No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage." SUF ¶ 3; SGI ¶ 3. The policy also contains the California Standard Fire Policy Provision endorsement AP1862–1, which provides that "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all of the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of loss." SUF ¶ 4; SGI ¶ 4.

Plaintiff submitted to defendant two separate claims for coverage. The gravamen of plaintiff's first claim for coverage ("first claim") was that wind damaged plaintiff's property, causing an opening to form in the roof of the property, wind driven rain to enter through the roof, and roof and water damage resulting from these water incursions. SUF ¶ 5; SGI ¶ 5. Plaintiff submitted this first claim to defendant, and, subsequently, plaintiff, plaintiff's counsel, and defendant engaged in a series of written correspondence regarding this claim, in which defendant indicated that it was denying coverage of plaintiff's claim. SUF ¶ 9–14; SGI ¶ 9–14.

The gravamen of plaintiff's second claim for coverage ("second claim") was that plaintiff's property suffered damage as a result of "a sudden and accidental discharge of water from a plumbing system on or about the area of the sink and a drain in proximity thereto." FAC ¶ 16; SUF ¶ 16; SGI ¶ 16. Plaintiff submitted this second claim to defendant, subsequent to which defendant made a partial payment of $30,244.92 on the second claim, and sent plaintiff a series of letters indicating that it was partially denying coverage

---

1. In its reply, defendant notes that plaintiff's opposition is untimely, in that it was filed one week late, on the same day on which defendant's reply was due. Reply at 3. On January 9, 2009, plaintiff filed a reply to defendant's reply, arguing that plaintiff and defendant had previously entered into a stipulation, pursuant to which plaintiff could file his opposition on January 2, 2009. Regardless of any procedural defect, the Court nevertheless considers plaintiff's opposition herein.

for plaintiffs claim. SUF ¶ 19–21; SGI 19–21.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *See also Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. *See also Abromson v. American Pacific Corp.,* 114 F.3d 898, 902 (9th Cir.1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz., v. A.E. Rouse & Co.,* 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## IV. DISCUSSION

### A. THE ONE–YEAR STATUTE OF LIMITATIONS

Defendant argues that the instant action is time barred by the one-year statute of limitations contained in the policy, because the instant action was filed on January 8, 2008, 255–57 days after the statute of limitations on plaintiff's first claim for coverage expired, and 230 days after the statute of limitations on plaintiff's second claim for coverage expired. Mot. at 3.

The parties do not dispute that the policy states "Suit Against Us—No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage." SUF ¶ 3; SGI ¶ 3. Furthermore, the parties do not dispute that the policy contains the California Standard Fire Policy Provision endorsement AP1862–1, which provides that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all of the requirements of this policy shall have been complied with, and unless commenced

within 12 months next after inception of loss." SUF ¶ 4; SGI ¶ 4.

█ Defendant notes that "this one-year limitations provision is a mandatory term required by California Insurance Code §§ 2070 and 2071" and has been held to be valid and enforceable by the courts. *Vashistha v. Allstate Ins. Co.,* 989 F.Supp. 1029, 1031 (C.D.Cal.1997); *see Prudential–LMI Commercial Ins. v. Superior Court,* 51 Cal.3d 674, 683, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990). The one-year statute of limitations bars both contract action and tort action not filed within the statutory period, as long as the claim for relief is "on the policy," meaning that it seeks "to recover policy benefits or [is] grounded upon a failure to pay policy benefits." *Sullivan v. Allstate Ins. Co.,* 964 F.Supp. 1407, 1409 (C.D.Cal.1997); *see also Magnolia Square Homeowners Ass'n v. Safeco Ins. Co.,* 221 Cal.App.3d 1049, 1063, 271 Cal.Rptr. 1 (1990) (where "essence of claims [for insurance bad faith, breach of fiduciary duties and breach of statutory duties] is an attempt to recover damages for failure to provide benefits under subject contract of insurance," claims are "fundamentally [claims] on the policy and [are] thus time barred."); *Campanelli v. Allstate Life Ins. Co.,* 322 F.3d 1086, 1096 (9th Cir.2003) ("Under California law any claim that is grounded in a failure to pay benefits that are due under the policy is treated as on the policy for purposes of § 2071's limitations period").

█ The one-year statute of limitations period begins to run at the "inception of the loss[,]" which is

> that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered. The inception of the loss occurs when the insured should

have known that appreciable damage had occurred, not when the homeowner learned the true extent of the damage. *Campanelli,* 322 F.3d at 1094. However, the statute of limitations is "equitably tolled from the time the insured files a timely notice, pursuant to policy notice provisions, to the time the insurer formally denies the claim in writing." *Prudential–LMI Com. Insurance v. Superior Court,* 51 Cal.3d 674, 687, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990).

Defendant argues that, with regard to the first claim for coverage, the inception of the loss occurred on April 5, 2006 or April 7, 2006. Mot. at 2; SUF ¶ 6; Def's Ex. B (Claim History Report for Pl's First Claim) ("DOL [date of loss]—04/05/2006"); Decl. of Alfred C. Ward ("Ward Dec.") ¶ 4 ("In my capacity as staff claims adjuster, I maintained the claim file for [plaintiff's first claim], which the Plaintiff submitted in connection with water damage the Property purportedly sustained on or about April 5, 2006"); FAC ¶ 1 ("On or about April 7, 2006, plaintiff KENNETH SHUGERMAN's residence was seriously damaged by wind driven rain ..."). Defendant argues that plaintiff did not submit this claim to defendant until 354 or 356 days later, on March 27, 2007. SUF ¶ 7; Def's Ex. B ("DOL [date of loss]—04/05/2006—report 3/27/2007 INSD HAS WATER AND MOLD DAMAGE TO HIS HOME"); Def's Ex. J (Pl's Response to Def's Request for Admissions) (In which plaintiff responded "Admit" to "Request for Admission NO. 2: Admit that YOU did not report YOUR FIRST LOSS to ALLSTATE until March 27, 2007.")

With regard to the second claim for coverage, defendant argues that the inception of the loss occurred on April 7, 2006. SUF ¶ 17; Def's Ex. J (Pl's Response to Def's Request for Admissions) (In which plaintiff responded "Admit" to "Request

for Admission NO. 10: Admit that the date of YOUR SECOND LOSS is April 7, 2006"); Def's Ex. C (Claim History Report for Pl's Second Claim) ("Date of loss: 4/7/2006"). Defendant argues that plaintiff did not report this damage to defendant until 363 days later, on April 5, 2007. SUF ¶ 18 citing Def's Ex. J (Pl's Response to Def's Request for Admissions) (In which plaintiff responded "Admit" to "Request for Admission NO. 11: Admit that YOU did not report YOUR SECOND LOSS to ALLSTATE until April 7, 2007"); Def's Ex. C (Claim History Report for Pl's Second Claim) ("Date Reported: 4/5/2007").

Once the insured files his claim with the insurer, the statute of limitations is equitably tolled until the insurer formally denies the claim in writing. *Prudential–LMI Com. Insurance v. Superior Court*, 51 Cal.3d 674, 687, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990). With regard to the first claim, defendant concedes that the statute of limitations was equitably tolled beginning on March 27, 2007 when plaintiff reported the claim. Defendant argues that the equitable tolling continued until April 17, 2007, when defendant sent plaintiff a letter stating "we are unable to find coverage for your loss."[2] Mot. at 3; SUF ¶ 8; FAC ¶ 37(a) ("On April 17, 2007, Allstate Insurance Company, through Diana Thomas, sent a letter to Plaintiff stating, in pertinent part, as follows: 'Based upon my inspection and our conversation, we are unable to find coverage for your loss.' "); Def's Ex. D (Letter from Allstate's Diana Thomas to Plaintiff, dated April 17, 2007). Defendant argues that, because defendant denied plaintiff's claim of April 17, 2007, the statute of limitations resumed running, and that the statutory period subsequently expired on either April 26, 2007 or April 28, 2007, depending on which date is used as the date of the inception of the loss. Mot. at 3. Defendant argues that because plaintiff waited until January 8, 2008, 255–57 days after the expiration of the statutory period, to file the instant action, plaintiff's action is barred. Mot. at 2.

With regard to the second claim, defendant concedes that the statute of limitations was equitably tolled beginning on April 5, 2007, when plaintiff filed his second claim with defendant. Defendant argues that the tolling continued through May 21, 2007, when defendant sent plaintiff a letter stating "I am pleased to inform you that we are able to pay for most of the damages arising from your loss. Unfortunately, we are unable to find coverage for part of your claim, specifically plumbing".[3][4] Mot. at 3; SUF ¶ 20: Def's Ex. E (May 21, 2007 Letter from Allstate's Diana Thomas to Plaintiff Kenneth Shugerman).

---

2. The Court notes that the April 17, 2007 letter also advised the plaintiff of the one-year statute of limitations period. *See* Def's Ex. D ("Please be advised that your policy contains a time limitation to pursue your claim, report additional damages or file a lawsuit, if you believe that it is necessary to protect your rights ... [further citing the one-year limitation in the policy]")

3. Defendant made a payment to plaintiff of $30,244.92 on the second claim on April 23, 2007. Mot. at 3, 10. On May 23, 2007, defendant sent a letter to plaintiff stating "A check in the amount of $30,244.92 [was] previously received. This check includes payment for: (1) the cost to repair or replace water damaged property in the amount of $25,244.92 and (2) $5,000.00 for mold remediation costs ... As we previously informed you, your homeowners policy affords a maximum of $5,000 for mold remediation costs from a covered water loss."

4. The May 21, 2007 letter informed plaintiff of the one-year time-limit contained in his policy. Def's Ex. E("Please be advised that your policy contains a time limitation to pursue your claim, report additional damages or file a lawsuit, if you believe that is necessary to protect your rights ... [further citing the one-year limitation in the policy]")

Defendant argues that, because defendant communicated this partial denial of plaintiff's claim on May 21, 2007, the statute of limitations resumed running, and that the statutory period subsequently expired on May 23, 2007. Mot. at 4. Defendant argues that plaintiff waited until January 8, 2008, 230 days after the expiration of the statutory period, to file the instant action. Mot. at 3.

Plaintiff, however, argues that summary judgment in inappropriate on this record. First, in his Statement of Genuine Issues, plaintiff disagrees with defendant's characterization of the dates of inception of the loss, stating that they are "unknown assumption[s] not based on fact." Pl's SGI ¶¶ 6, 17. Furthermore, plaintiff disagrees with defendant's characterization of the dates on which plaintiff reported the first and second claims to defendant, stating again that they are "unknown assumption[s] not based on fact." Pl's SGI ¶¶ 7, 18. However, plaintiff does not provide any evidence to contradict the substantial evidence set forth by defendant establishing both the dates of inception of the loss and the dates on which the claims were reported to defendant. In fact, it is particularly noteworthy that, in response to de-

fendant's request for admissions, plaintiff admitted that he did not report his first claim to defendant until March 27, 2007, that the date of inception of the loss for his second claim was April 7, 2006, and that he did not report his second claim to defendant until April 7, 2007. *See* Def's Ex. J.

Furthermore, plaintiff argues that the statute of limitations continued to be equitably tolled beyond the dates set forth by defendant, because "sending letters subject to interpretation, as well as letters that infer partial denials, are unfair, and should not be construed as a formal denial of a claim. Indeed, partial would reasonably infer that investigation is certainly not complete, and therefore the partial denial, and arguably any other, is subject to further investigation ..." [5] Opp'n at 6.

Considering the arguments of the parties and the evidence set forth by defendant, the Court finds that summary judgment is appropriate in this action. Because defendant has met his burden in submitting evidence indicating that there is no triable issue of fact as to the dates of the inception of the loss and the dates of filing of the claims, and because plaintiff has failed to rebut defendant's evidence, the Court finds that defendant

---

**5.** Plaintiff further argues that summary judgment should be denied, because "the statute of limitations, in bad faith claims, arguably has a two year statute of limitations." Opp'n at 6. However, plaintiff cites no authority to support this proposition. The Court notes that there has been some split of authority in California as to whether policy provisions limiting time to sue apply to "bad faith" actions, in that some earlier cases found that time-to-sue provisions were not applicable to bad faith actions. Justice H. Walter Croskey & Justice Marcus M. Kaufman, *California Practice Guide: Insurance Litigation* § 12:1110 (The Rutter Group 2007); *see Frazier v. Metropolitan Life Ins. Co.*, 169 Cal.App.3d 90, 104, 214 Cal.Rptr. 883 (1985); *Murphy v. Allstate Ins. Co.*, 83 Cal.App.3d 38, 44, 147 Cal.Rptr. 565 (1978). However, the more current view

is that the one-year statute of limitations applies to bad faith claims where the claim is "on the policy." *See* Justice H. Walter Croskey & Justice Marcus M. Kaufman § 12:1115: *Velasquez v. Truck Ins. Exch.*, 1 Cal.App.4th 712, 719–21, 5 Cal.Rptr.2d 1 (1991); *Magnolia Square Homeowners Ass'n*, 221 Cal.App.3d at 1063, 271 Cal.Rptr. 1 (where "essence of claims [for insurance bad faith, breach of fiduciary duties and breach of statutory duties] is an attempt to recover damages for failure *to provide benefits under subject* contract of insurance," claims are "fundamentally [claims] on the policy and [are] thus time barred.") Here, there is no indication that plaintiff's claim is not a claim "on the policy," and therefore, the one-year statute of limitation applies.

has established that the inception of the loss giving rise to the first claim occurred on April 5, 2006 or April 7, 2006, and was not reported by plaintiff until 354 or 356 days later, on March 27, 2007. Furthermore, the Court finds that defendant has established that the incident giving rise to the second claim occurred on April 7, 2006, and was not reported by plaintiff until April 5, 2007, 363 days later.[6][7]

Defendant's evidence further demonstrates that although the statute of limitations was tolled between March 27, 2007 and April 17, 2007 for plaintiff's first claim and between April 5, 2007 and May 21, 2007 for plaintiff's second claim, defendant denied plaintiff's first claim on April 17, 2007 and partially denied plaintiff's second claim on May 21, 2007.[8][9] Therefore, the statute of limitations as to the first claim expired on either April 26, 2007 or April 28, 2007, and the statute of limitations as to the second claim expired on May 23, 2007, rendering plaintiff's suit, filed on January 8, 2008, untimely.

## B. ESTOPPEL

■■■ Defendant further argues that it took no actions subsequent to the denial of

plaintiff's claim that would estop defendant from asserting a statute of limitations defense. Mot. at 10. "An estoppel arises as a result of some conduct by the defendant, relied on by the plaintiff, which induces the belated filing of the action." *Prudential–LMI Commercial Ins.*, 51 Cal.3d at 690, 274 Cal.Rptr. 387, 798 P.2d 1230; *see also Spray, Gould & Bowers v. Associated Int'l Ins. Co.*, 71 Cal.App.4th 1260, 1268, 84 Cal.Rptr.2d 552 (1999) (To establish estoppel, "(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury"). "For example, if the insurer expressly extends the one-year suit provision during its claim investigation . . . [or] leads its insured to believe that an amicable adjustment of the claim will be made, thus delaying the insured's suit," the insurer will be estopped from asserting a statute of limitations defense. *Id.*

Defendant argues that there is no evidence that defendant made any misrepre-

---

6. Defendant's Request for Admission indicates that plaintiff admitted that the date of reporting for the second claim was April 7, 2007, rather than April 5, 2007. *See* Def's Ex. J. However, even if the date of reporting was deemed to be April 7, 2007, the analysis contained herein would remain unchanged.

7. The statute of limitations begins to run at the time "when the insured should have known that appreciable damage had occurred . . ." *Campanelli*, 322 F.3d at 1094. Here, plaintiff presents no evidence to indicate that he should not have known that appreciable damage had occurred by April 7, 2006.

8. Furthermore, defendant's evidence indicates that there is no triable issue as to whether defendant provided notice to plaintiff of the one year limitation, given that both denial letters sent from defendant to plaintiff con-

tained statements informing plaintiff of the statute of limitations. *See Spray, Gould & Bowers v. Associated Int'l Ins. Co.*, 71 Cal. App.4th 1260, 1269, 84 Cal.Rptr.2d 552 (1999) (An insurer may be estopped from asserting a policy's contractual limitations provision if it fails to provide a first-party insured or beneficiary with the required notice.)

9. Although plaintiff seems to argue that a "partial denial" is, by its very nature, equivocal, there is no evidence that defendant indicated to plaintiff that the remaining part of his claim was still under consideration. Instead, it appears, based on the evidence submitted by defendant, that defendant explicitly granted the remainder of plaintiff's claim, through its payment of $30,244.92 to plaintiff.

sentations to plaintiff that would have called into question the fact that plaintiff's first claim had been unequivocally denied and that plaintiff's second claim had been unequivocally partially denied, and that there is no evidence that plaintiff detrimentally relied on any such misrepresentations. Mot. at 12. Specifically, defendant argues that the written correspondence that occurred between plaintiff's counsel, plaintiff, and defendant subsequent to the April 17, 2007 denial of plaintiff's first claim and the May 21, 2007 partial denial of defendant's second claim did not contain any representations that would have extended the equitable tolling period or estopped defendant from asserting a statute of limitations defense. Mot. at 12.

With regard to plaintiff's first claim, defendant submits evidence indicating that plaintiff's counsel's wrote to defendant on May 3, 2007, stating that he was "in receipt of your letter dated April 17, 2007 denying coverage in this matter," and requesting further information about the basis for this denial. Def's Ex. I. On June 4, 2007, defendant responded to plaintiff's counsel in writing, stating that the field adjuster would contact him to discuss the pertinent issues he raised, and further stating:

> Your policy says 'SUITS AGAINST U.S. No suit may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the date of loss.' If you believe this claim has been wrongfully denied or rejected, you may have the matter re-

viewed by the Department of Insurance.[10]

SUF ¶ 10; SGI ¶ 10; Def's Ex. M. Defendant's submits evidence demonstrating that, on August 20, 2007, defendant again wrote to plaintiff's counsel in response to additional requests for information by plaintiff's counsel, stating

> In your correspondence dated June 6, 2007, you ask what facts our claims office relied upon in stating that this claim was not filed in a timely manner. According to our initial report our insured filed this claim on 03/27/07 with a date of loss of 4/05/06. After reviewing the Barton estimate the date of loss was given at 04/07/06. Both reported dates indicate that eleven and half months do not demonstrate prompted [sic] reporting. The mold report indicates that the 'Stachybotry species' which normally takes time to develop. This sampling took place on 03/15/07 which again was eleven and a half months later. The passage of time has hindered our investigation. The denial letter prepared by Diana Thomas, dated April 17, 2007, does not include the concurrent causation exclusion. However, we can avail ourselves to this exclusion at a later date and upon further investigation . . .

SUF ¶ 13; SGI ¶ 13; Def's Ex. Q.

Defendant also submits a letter, dated September 14, 2007 from defendant to plaintiff's counsel, in which defendant stated

> We're writing to you because it's important to keep you updated about the status of your claim until it is settled.

---

**10.** The Court notes that this letter also stated "Both your Allstate Policy and California Law provide you up to one year to present and pursue a claim for damages. This time period ran from the date of the inception of your loss until it was reported to Allstate and will begin running again as of the date of this

letter." *See* Def's Ex. M. However, even if the statutory period for the first claim were to have been tolled as of the date of this letter—June 4, 2007—rather than April 17, 2007, the analysis herein does not change, as plaintiff's suit would nevertheless be time-barred by the statute of limitations.

**About Your Claim** Currently, Our investigation of your loss is continuing. **We're Here to Help You.** We realize property damage is unfortunate. We are committed to handling your claim quickly and fairly ... Again, we will continue to update you about the status of your claim until it is settled.

Def's Ex. R; FAC ¶ 37(c) (emphasis in the original). Finally, defendant argues that defendant's coverage counsel reiterated its denial of the first claim on September 20, 2007, through a letter to plaintiff's counsel which stated

This letter is to inform you that Allstate continues to deny coverage for Mr. Shugerman for this claim ... If you are in possession of any additional information or legal authority you feel would warrant a reconsideration of Allstate's position, please submit that information to our office for Allstate's consideration. In the absence of additional information, however, Allstate's position remains as stated.

SUF ¶ 14.

With regard to plaintiff's second claim, defendant submits evidence demonstrating that defendant sent plaintiff a letter on May 23, 2007, two days following its letter to plaintiff which stated "unfortunately, we are unable to find coverage for part of your claim, specifically, plumbing." In this May 23, 2007 letter, defendant explained the partial coverage it had afforded on plaintiff's second claim, stating:

A check in the amount of $30,244.92 [was] previously received. This check includes payment for: (1) the cost to

repair or replace water damaged property in the amount of $25,244.92 and (2) $5,000.00 for mold remediation costs ... As we previously informed you, your homeowners policy affords a maximum of $5,000 for mold remediation costs from a covered water loss.

SUF ¶ 21; SGI ¶ 21. Subsequently, defendant states that it sent its "last letter" regarding plaintiff's second claim to plaintiff on June 1, 2007.[11] SUF ¶ 22. Although neither defendant nor plaintiff appear to have submitted a copy of this letter, plaintiff quotes the letter in his FAC:

We're writing to you because it's important to keep you updated about the status of your claim until it's settled. ABOUT YOUR CLAIM Currently we are in the process of concluding the claim. **We're Here to Help You.** We realize property damage is unfortunate. We are committed to handling your claim quickly and fairly ... Again we will continue to update you about the status of your claim until it is settled.

FAC ¶ 37(b) (emphasis in the original).

Defendant argues that the fact that it engaged in this correspondence with plaintiff subsequent to the denial of plaintiff's claims did not have the effect of further tolling the statute of limitations. *See Singh v. Allstate Ins. Co.*, 63 Cal.App.4th 135, 142, 73 Cal.Rptr.2d 546 (1998) (declining to further toll the statute of limitations during time when plaintiff requested reconsideration of the denial of their claim, stating "justifications for equitable tolling are absent, once the carrier has initially

---

**11.** With regard to defendant's statement in its Statement of Undisputed Facts that "On June 01, 2007, Allstate wrote its last letter to Plaintiff regarding the Second Claim," plaintiff indicates in his Statement of Genuine Issues that he "concur[s] as to letter." SGI ¶ 22. It is not clear from this statement, nor from plaintiff's opposition, whether plaintiff is contesting defendant's assertion that this was defendant's "last letter" to plaintiff regarding plaintiff's second claim. Regardless, plaintiff has not submitted any evidence of any subsequent letters.

denied the claim"); *Ashou v. Liberty Mut. Fire Ins. Co.*, 138 Cal.App.4th 748, 762–63, 41 Cal.Rptr.3d 819 (2006) ("while an insurer is contractually obligated to conduct a timely investigation of an initial claim, an insurer has no such obligation with respect to a request for reconsideration of a denied claim ... As one of the purposes of equitable tolling is to allow the insurers time to conduct full investigations into claims made, equitable tolling should only apply—in the context of a previously denied claim—when the insurer has agreed to reopen and reinvestigate the claim."); *Migliore v. Mid–Century Ins. Co.*, 97 Cal. App.4th 592, 606, 118 Cal.Rptr.2d 548 (2002) ("A statement of willingness to reconsider does not render a denial [by an insurer] equivocal.")

Furthermore, defendant argues that, even if the correspondence between plaintiff's counsel and defendant could have indicated to plaintiff that his claim remained under consideration, it would not have extended the tolling period, because the correspondence between plaintiff's counsel and defendant regarding plaintiff's claims occurred after the statute of limitations had already expired. *See CBS Broad. v. Fireman's Fund Ins. Co.*, 70 Cal.App.4th 1075, 83 Cal.Rptr.2d 197 (1999) ( "[plaintiff] cannot escape the effect of the limitations provision by relying on Fireman's actions occurring months after the claim was barred"); *Prudential–LMI Com. Ins.*, 51 Cal.3d at 690, n. 5, 274 Cal.Rptr. 387, 798 P.2d 1230 ("... [C]onduct by the insurer after the limitation period has run—such as failing to cite the limitation provision when it denies the claim, failing to advise the insured of the existence of the limitation provision, or failing to specifically plead the time bar as a defense—cannot, as a matter of law, amount to a waiver or estoppel").

The Court finds that, with regard to plaintiff's first claim, the subsequent correspondence between defendant and plaintiff's counsel did not further toll the statute of limitations or otherwise estop defendant from raising the statute of limitations as an affirmative defense. Although the September 14, 2007 letter to plaintiff's counsel, in which defendant states "Our investigation of your loss is continuing.... Again, we will continue to update you about the status of your claim until it is settled." might arguably have indicated to plaintiff's counsel that consideration of plaintiff's claim was ongoing, this fact is irrelevant because the September 14, 2007 letter was sent after the statutory period had already expired, and therefore, under *Prudential–LMI Com. Ins.*, 51 Cal.3d at 690, n. 5, 274 Cal.Rptr. 387, 798 P.2d 1230, cannot serve as a basis for estoppel. Furthermore, the subsequent September 20, 2007 letter from defendant to plaintiff's counsel unequivocally stated that plaintiff's claim was denied. Therefore, even if the statute of limitations was tolled through September 20, 2007, the statutory period would nevertheless have expired well before January 8, 2008, when plaintiff filed the instant action.

Similarly, with regard to plaintiff's second claim, subsequent correspondence by defendant to plaintiff's counsel does not render this action timely. Even if the June 1, 2007 letter from defendant to plaintiff, in which defendant states "We're writing to you because it's important to keep you updated about the status of your claim until it's settled. ABOUT YOUR CLAIM Currently we are in the process of concluding the claim.... Again we will continue to update you about the status of your claim until it is settled" might have indicated to plaintiff that consideration of his claim was ongoing, this fact is irrelevant because the June 1, 2007 letter was sent after the statutory period expired on

May 23, 2007, and therefore, under *Prudential–LMI Com. Ins.*, 51 Cal.3d at 690, n. 5, 274 Cal.Rptr. 387, 798 P.2d 1230, cannot serve as a basis for estoppel.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment. Each party shall bear its own attorneys' fees and costs. Dated: January 12, 2009